# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LAWRENCE MENDEZ,**<br><br>**Plaintiff,**<br><br>    **v.**<br><br>**JOHN C. PHELAN in his official capacity as Secretary of the Navy,[1]**<br><br>**Defendant.** | **No. 22-cv-1382-ZMF** |

## <u>MEMORANDUM OPINION</u>

This case arises under the Administrative Procedure Act (APA) and involves a challenge by Plaintiff Lawrence Mendez to the decision of the Board for Correction of Naval Records (BCNR) to deny his petition to remove an adverse combat Fitness Report from his service record. Mendez contends that the BCNR's denial of his application for correction of his military record was arbitrary, capricious, and an abuse of discretion. He further seeks to supplement the administrative record on the ground that the BCNR's decision was overtly hostile, which he contends demonstrates bad faith. *See* Pl.'s Mot. for Summ. J. (Pl.'s Mot.), ECF No. 16; *see also* Def.'s Cross Mot. for Summ. J. (Def.'s Mot.), ECF No. 19. For the reasons set forth herein, the undersigned GRANTS Defendant's cross motion for summary judgment, and DENIES Plaintiff's motion for summary judgment.

---

[1] The Court automatically substitutes the current Secretary of the Navy in the case caption pursuant to Fed. R. Civ. P. 25(d) (providing that "when a public officer . . . ceases to hold office while the action is pending . . . [t]he officer's successor is automatically substituted as a party.").

## I.     BACKGROUND

### A.     Regulatory Background

The APA provides for judicial review of agency actions. This mechanism ensures that agency decisions are not arbitrary or capricious.

The BCNR serves as the primary body for correcting errors in the military records of current and former members of the U.S. Navy and Marine Corps. *See* 10 U.S.C. § 1552.

### B.     Factual Background

Lawrence Mendez served as an active-duty member of the United States Marine Corps (USMC) from 1996 until his honorable discharge in 2010. *See* AR 0082; Pl.'s Am. Compl. (Compl.) ¶ 5, ECF No. 11. In 2007, Mendez was deployed to Iraq as a Battalion Adjutant. *See* AR 0092; Compl. ¶ 6. His immediate superior during this time was Lieutenant Colonel Stephen Liszewski.[2] *See* AR 0092; Compl. ¶ 7. Mendez was later removed from his position as Battalion Adjutant due to alleged deficiencies in performance, and he received an adverse Fitness Report. *See* AR 0093, AR 1329–1349; Compl. ¶¶ 9–10. In January 2008, Mr. Mendez filed an Equal Opportunity ("EO") complaint detailing alleged disparate treatment he experienced during deployment. *See* AR 0088–0090, 0579–0581. In December 2008, Mendez petitioned the Performance Evaluation Review Board (PERB) for the removal of the adverse Fitness Report from his record. *See* AR 0839–0850. PERB denied his petition and subsequent appeals. *See* AR 0740–0741, 0849–0850.

In 2009, Mendez sought to correct his record through the BCNR. *See* AR 0681–0685. The BCNR concurred with the PERB's determination and denied Mendez's request to remove the adverse Fitness Report. *See id.* Mendez petitioned the BCNR to reconsider its decision, but it

---

[2] Lieutenant Colonel Stephen Liszewski has since been promoted to Major General.

refused to do so. *See* AR 0686–0689. In 2010, Mendez was honorably discharged from active duty. *See* AR 0015.

After his discharge, Mendez filed suit in the Court of Federal Claims to seek removal of the adverse Fitness Report. *See Mendez v. United States*, 103 Fed. Cl. 370 (2012). The court remanded the case to the BCNR to reconsider a particular portion of the Fitness Report. *See id.* at 383–84.

On remand, the BCNR removed an incorrect characterization from the Fitness Report. *See* AR 0093. However, the BCNR did not find that this error warranted the removal of the adverse Fitness Report. *See id.* The Court of Federal Claims upheld this decision and the Court of Appeals for the Federal Circuit affirmed on appeal. S*ee Mendez v. United States*, 108 Fed. Cl. 350, 357 (Ct. Fed. Cl. 2012); *Mendez v. United States*, 600 Fed. App'x 731 (Ct. Fed. Cl. 2015), cert. denied ___ U.S. ___, 136 S. Ct. 62 (2015).

In 2020, Mendez submitted another request for reconsideration to the BCNR, proffering new evidence such as affidavits from four former colleagues about his performance and the command climate. *See* AR 0091–0099; Compl. ¶ 17. The BCNR reviewed his request and denied it in 2021. *See* AR 0001–0005. The BCNR relied on an advisory opinion from the USMC Staff Judge Advocate, concluding that the new evidence was not material and could have been presented earlier. *See* AR 0686–0687; Compl. ¶¶ 18–20.

On May 18, 2022, Mendez filed a lawsuit in this Court, challenging the BCNR's decision. *See* Compl. Judge Kollar-Kotelly remanded the matter to the BCNR to reconsider the issues that Mendez raised in his Complaint. *See* Order, Sep. 14, 2022, ECF No. 9. On remand, the BCNR found no merit to either cause of action detailed in Mendez's Complaint. *See* AR 0445–0448.

Mendez now challenges that decision as arbitrary, capricious, unsupported by evidence, and contrary to law. *See* Compl. ¶¶ 32–42. Specifically, Mendez argues that the BCNR's decision to deny his request for correction of his military record was arbitrary and capricious under the APA and that this Court should grant his motion to complete the administrative record or conduct discovery.

## II.     LEGAL STANDARD

### A.     Summary Judgment

In cases brought under the APA, summary judgment is the appropriate method to determine whether an agency's action is supported by the administrative record and complies with the APA's standards of review. *See Loma Linda Univ. Med. Ctr. v. Sebelius*, 684 F. Supp. 2d 42, 52 (D.D.C. 2010). Under the APA, a court must "hold unlawful and set aside" any agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A).

When reviewing agency actions under the APA, the court's role is to assess whether the "agency's explanation of the basis for its decision [] include[d] a 'rational connection between the facts found and the choice made.'" *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). The court does not engage in new fact-finding. *See Spelman v. McHugh*, 65 F. Supp. 3d 40, 44 (D.D.C. 2014). Rather, the court functions as an appellate body, determining if the agency's decision is supported by the administrative record. *See id.* In cases involving military records, courts apply an "unusually deferential" standard of review. *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989). Nonetheless, the agency must clearly articulate a rational connection between

the facts it found and the decision it made. *See Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995).

An agency's decision is considered arbitrary and capricious if it relied on factors that Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation that runs counter to the evidence before it. *See Escobedo v. Green*, 602 F. Supp. 2d 244, 248 (D.D.C. 2009). The arbitrary and capricious review standard is one that "presumes the validity of agency action." *Hagelin v. Fed. Election Comm'n*, 411 F.3d 237, 242 (D.C. Cir. 2005). Accordingly, the court must determine whether the agency's decision resulted from a clear error in judgment. *See Escobedo*, 602 F. Supp. 2d at 248.

The plaintiff bears the burden of proving that the BCNR's decision was arbitrary, capricious, or contrary to law, and must do so with "cogent and clearly convincing evidence." *Coburn v. McHugh*, 77 F. Supp. 3d 24, 30 (D.D.C. 2014).

## III.   DISCUSSION

### A.   Completeness of the Administrative Record

#### 1.   Legal standard

Under the APA, judicial review is generally confined to the administrative record compiled by the agency. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973). A complete administrative record should encompass all materials that might have influenced the agency's decision, not merely those upon which the agency ultimately relied. *See Amfac Resorts, LLC v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001). There exists a presumption that the agency has properly designated the administrative record. *See id.*; *see also Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420 (1971). However, a party can overcome this presumption with a strong showing of bad faith or improper conduct, or that the record is insufficiently complete to support thorough

judicial review. *See Baptist Mem'l Hosp.-Golden Triangle v. Sebelius*, 566 F.3d 226, 230 (D.C. Cir. 2009). In such cases, courts may order "supplement[ation of] the record . . . [or] extra-record discovery." *FBME Bank Ltd. v. Mnuchin*, 249 F. Supp. 3d 215, 227 (D.D.C. 2017).

To "show[] action based on an improper motive, and to overcome the presumption that a government official is acting in good faith, the plaintiff must show '[a]lmost irrefragable' proof, that is 'clear and convincing evidence' of bad faith." *Bear Mountainside Realty LLC v. United States*, 168 Fed. Cl. 179, 191 (2023), *aff'd*, 2024-cv-1245, 2025 WL 2318317 (Fed. Cir. Aug. 12, 2025) (quoting *Galen Med. Assocs., Inc. v. United States*, 369 F.3d 1324, 1330 (Fed. Cir. 2004)). Courts require "clear or specific evidence" for this showing. *Alston v. Lew*, 950 F. Supp. 2d 140, 145 (D.D.C. 2013). Mere speculation or unsubstantiated allegations are insufficient. *See id.*

### 2. Administrative record is complete here

Mendez alleges improper conduct by the Navy. *See* Pl.'s Mot. at 13–14. Specifically, he alleges that Major General Liszewski "compromised or influenced these proceedings," and that "the Department of the Navy is working to cover up alleged wrongdoing and toxicity of a very senior Marine Corps officer." *Id.* He further contends that the "overt hostility" in the BCNR's order and the fact that the BCNR "requested an advisory opinion from the Staff Judge Advocate to the Commandant of the Marine Corps" supports additional discovery into "possible ulterior motives." *Id.* In sum, he demands "better fidelity on communications between the Board and Headquarters Marine Corps that may have been relied upon in rendering this decision (especially since much of this decision comes down to whether the Board abused its discretion)." *Id.* at 13.

That the BCNR's requested an advisory opinion from the Staff Judge Advocate is not a justification for additional discovery. *See* Pl.'s Mot. at 13–14. The BCNR's request was a standard procedure authorized by Marine Corps Order (MCO) 5800.16. *See* MCO 5800.16, Vol 1,

§ 010304, *available at* https://perma.cc/AV9H-9WMX (last visited Dec. 9, 2025). And more broadly, the Secretary of the Navy expressly authorized the BCNR to seek "records and/or advisory opinions" from "all commands, bureaus, offices, and boards" to assist it "in the performance of its duties." Secretary of the Navy Instruction (SECNAVINST 5420.193 ¶ 3(d)), *available at* https://perma.cc/2YAJ-X9FT (last visited Dec. 9, 2025). Following legally authorized standard procedure demonstrates that the BCNR's actions were devoid of improper influence. *See Wilderness Soc'y v. U.S. Forest Serv.*, 11-cv-00246, 2012 WL 1079169, at \*1 (D. Colo. Mar. 30, 2012) ("It is well-established that when an agency follows its established procedures, its official acts are entitled to a presumption of regularity."). Moreover, advisory opinions are merely advisory. SECNAVINST 5420.193 at Encl. (3) ¶ 7. Because the BCNR could have disregarded the opinion, Mendez cannot show improper influence. *See id.* Without evidence to the contrary, the Court must presume that the BCNR "analyze[d] the contents of the advisory opinion as it would any other evidentiary item and then ma[d]e an independent determination as to whether or not [Mendez's] request should be granted based on the total evidence or record." *Id.*

Additionally, Mendez fails to offer clear or specific evidence of bias. *Remote Diagnostic Techs. LLC v. United States* demonstrates how difficult this showing is. *See* 132 Fed. Cl. 73, 75 (2017). There, Remote Diagnostic Technologies ("RDT") sought limited discovery to obtain information regarding the agency's decision to take certain actions in response to a bid protest. *See id.* RDT argued that the discovery was necessary to "fill gaps in the Administrative Record" and that the agency's action "[wa]s unexplainable absent a showing of bad faith or bias" towards a competing vendor. *Id.* To support its claim of bias, RDT pointed to evidence that the competing vendor had requested meetings with the contracting officer and communicated with an agency team member reviewing solicitation requirements. *See id.* The court acknowledged that these

events "may, on the surface, seem to indicate bias may have existed." *Id.* at 76. Yet, the court concluded that, upon closer examination, the interactions were merely a "routine part of contracting" and did not support a threshold showing of bad faith or bias. *Id.*

Mendez offers even less support for his allegations. First, Mendez relies on generic allegations of toxic command climate. *See* Pl.'s Mot. at 13. However, he fails to offer specific evidence that the BCNR's proceedings were compromised or that Major General Liszewski had any involvement in its decision. *See id.* Second, Mendez's counsel opined that she had "never seen such a vindictively written decision," and that "[i]t was almost as though Major General Liszewski personally authored the decision." Pl.'s Reply at 3, ECF No. 21. However, counsel's opinions, with no evidence to support them, are insufficient to show bias. *See W. Ctr. for Journalism v. IRS*, 116 F. Supp. 2d 1, 11 (D.D.C. 2000). In sum, Mendez's offerings fall short of the "strong showing of bad faith or improper behavior" needed for this Court to order additional discovery. *Lebrun v. England*, 212 F. Supp. 2d 5, 19 (D.D.C. 2002) (finding that "inconsistencies" between draft declarations prepared by the BCNR investigator was insufficient for a finding of bad faith warranting additional discovery).

B.    The BCNR's decision was not an abuse of discretion

1.    *The BCNR's finding that there was insufficient evidence of a toxic command climate was neither arbitrary nor capricious*

Courts uphold an agency's decision if it is based on a reasoned analysis and supported by the administrative record. *See Fritch v. U.S. Dep't of State*, 220 F. Supp. 3d 51, 59 (D.D.C. 2016). Under the APA, courts give deference to agency decisions. *See U.S. Postal Serv. v. Postal Regul. Comm'n*, 816 F.3d 883, 886 (D.C. Cir. 2016). Courts give special deference in matters involving military personnel and expertise because federal courts are "particularly unfit to review the substance of military decisions." *See Myer v. Air Force Bd. for Corr. of Mil. Recs.*, 19-cv-1312,

2025 WL 485402, at *3 (D.D.C. Feb. 13, 2025). This greater deference extends to the BCNR's decisions. *See Hoffman v. United States*, 16 Cl. Ct. 406, 408 (1989). This is because "Congress has entrusted the primary duty of correcting military records to the correction boards." *Id.* Specifically, "military records-correction statute gives broad discretion to the heads of military departments to decide when to alter a record, empowering them to do so 'when [they] consider it necessary to correct an error or remove an injustice." *Myer*, 2025 WL 485402, at *3 (quoting 10 U.S.C. § 1552(a)(1)).

Mendez alleges that Major General Liszewski subjected him to a toxic command climate resulting in the adverse Fitness Report. *See* Compl. ¶¶ 16, 33. For several reasons, the BCNR found the evidence Mendez proffered inadequate to support such a finding. First, the BCNR noted that Mendez never raised "a toxic command climate . . . in any of [his] previous applications for relief to [the BCNR], the [PERB], or the Court of Federal Claims." AR 0446. Mendez argues that this is untrue. *See* Pl.'s Mot. at 14–15. Mendez claims to have alleged instances of disparate treatment as evidence of a hostile environment in his 2008 EO complaint. *See id.* (citing AR 0579–0581). However, that was the only instance he made such claim and that complaint was not before "[the BCNR], the [PERB], or the Court of Federal Claims." AR 0446. Indeed, as Mendez admitted: "[n]one of the [other] previous applications, complaints, or appeals [he] submitted [to the BCNR] provided evidence of the toxic leadership in Mr. Mendez's unit." *See* AR 0092. Considering the lack of prior complaints is appropriate. *See Wright v. Shinseki*, No. 09-1687, 2011 WL 2848717, at *4 (Vet. App. July 20, 2011) (holding that military body was permitted to consider the lack of treatment or complaints over an extended period of time when adjudicating a claim of disability compensation). For example, in *Galloway v. George Junior Republic*, the court considered a case where plaintiff claimed that inadequate conditions at a treatment facility violated the Fair Labor

Standards Act. *See* 12-cv-1399, 2013 WL 5307584, at \*15 (W.D. Pa. Sep. 19, 2013). The court found certain allegations unfounded, in part, because the plaintiff had failed to complain previously. *Id.* The court noted that the "failure to complain [was] entitled to 'substantial weight' on the issue of whether the facilities were adequate." *Id.* Likewise, Mendez's failure to complain in the past supports the BCNR's decision to discredit his allegations.

Second, the BCNR noted that aside from Mendez's complaint, no other formal grievances or complaints were filed by "the hundreds of Marines and Sailors assigned to the battalion at the time." *See* AR 0447. "[T]he absence of any such documented findings suggests that the opinion of the command climate expressed by [Mendez] and [his affiants] was not widely shared." AR 0447. The absence of other complainants is relevant to consider. Indeed, "[t]he absence of particular evidence may sometimes provide clues as important as the presence of such evidence." *Leopold v. CIA*, 987 F.3d 163, 167 (D.C. Cir. 2021). *Galloway* again highlights this. There, the court concluded that the conditions were not inadequate because "no one else experienced problems with these [] rooms and [] no one else complained about them." *Galloway*, 2013 WL 5307584, at \*15. Thus, that no one else had complained of a toxic command culture supports the BCNR's decision to discredit Mendez's allegations.

Given that the BCNR acted within its discretion when evaluating the evidence before it, the BCNR's decision was neither arbitrary nor capricious. *See Baker v. England*, 397 F. Supp. 2d 18, 28 (D.D.C. 2005) (BCNR's decision to deny petition to remove adverse fitness reports not arbitrary or capricious, where PERB found no defect in officer's record and BCNR stated that it relied on full record in formulating its decision); AR 0447.

2.    *The BCNR properly assessed the credibility of Mendez's affiants.*

"Once [] evidence is submitted, it is incumbent on the [BCNR] to 'evaluate the weight of the evidence,'" *Kays v. Snyder*, 846 F.3d 1208, 1211 (Fed. Cir. 2017) (quoting *Holton v. Shinseki*, 557 F.3d 1362, 1370 (Fed. Cir. 2009)), and "resolve any conflicts [therein]." *Gardiner v. Wilkie*, 17-4585, 2018 WL 6313619, at *2 (Vet. App. Dec. 4, 2018). "[A]bsent clear error, 'an agency's credibility decision normally enjoys almost overwhelming deference.'" *Bean Dredging*, *LLC v. United States*, 773 F. Supp. 2d 63, 81 (D.D.C. 2011) (quoting *Sasol N. Am. Inc. v. NLRB*, 275 F.3d 1106, 1112 (D.C. Cir. 2002)).

Mendez argues that the BCNR failed to properly consider the statements he proffered through four affiants, and that such failure constitutes abuse of discretion. *See* Pl.'s Mot. at 15–16. Mendez is incorrect. First, the BCNR noted that Mendez "hand-picked" the four affiants from hundreds of soldiers. AR 0447. As such, the affiants "reflect[ed] the opinions of a very small and unrepresentative group . . . voicing opinions on matters that they were not necessarily qualified to render." *Id.* Second, the BCNR discredited three of the four statements because they "came from Navy personnel rather than from Marines." *Id.* The BCNR concluded that "such personnel would have been a significant minority within a task force commanded by a Marine officer, and they would have been relatively unqualified to comment upon the expectations and quality of Marine Corps leadership."[3] *Id.* Third, "three out of four [affiants] specifically acknowledged that their observation of [Mendez's] performance was limited." AR 0447–0448. In sum, the BCNR had a

---

[3] The BCNR did err in describing three of the four affiants as Navy personnel. In fact, two were Navy personnel. *See* AR 529–37. But this error was harmless. There was still a basis to discount two of the four affiants. And this error does not impact the other reasoning provided by the BCNR in discounting the credibility of the other affiants. *See Schlichting v. Astrue*, 11 F. Supp. 3d 190, 207 (N.D.N.Y. 2012) (finding any error regarding plaintiff's treatment level was harmless because the factfinder's credibility determination was independently supported by substantial evidence).

reasonable factual basis to find that the "[n]one of the four individuals from whom [Mendez] received statements were remotely qualified to judge [his] performance as the Battalion Adjutant, or positioned to routinely observe [his] interactions with battalion leadership." *See Johnathon M. v. Saul*, 18-cv-2229, 2020 WL 1249889, at *4 (D. Or. Mar. 16, 2020) (ALJ did not err in reviewing conflicting evidence and reasonably discounting it based on the record); AR 0447.

3. *The Board's denial of a hearing was within its discretion.*

The BCNR has the discretion to rule without holding a hearing. *See* 32 C.F.R. § 723.3(e)(1). When making this decision, the BCNR considers whether the administrative record is sufficiently detailed to answer the questions presented. *See Smith v. Dalton*, 927 F. Supp. 1, 7 (D.D.C. 1996) (considering whether BCNR acted arbitrarily and capriciously by denying plaintiff's application for correction of his service record without a hearing). "[T]his Court should only intervene if it finds that the [BCNR's] denial of a hearing was an abuse of discretion." *Powell v. Marsh*, 560 F. Supp. 636, 640 (D.D.C. 1983).

Mendez had requested a hearing to allow his witnesses to testify under oath and provide the BCNR an opportunity to ask questions. *See* AR 0445–0447; Pl.'s Mot. at 17–18. However, the BCNR determined that a hearing was unnecessary based on the extensive record before it. *See* AR 0445–0446. The record contained Mendez's complaint to this Court, his EO complaint, his affidavits from four other servicemembers, past decision letters and historical case files for each of his previous requests for relief from the BCNR, relevant portions of his naval record, and other supporting documents. *See* AR 0445, 0529–0605. The BCNR reviewed each of these documents. *See* AR 0445–0448. From that review, the BCNR concluded that a hearing would not yield any new, relevant information that could alter its decision. *See* AR 0445–0446. "Given the extent of the record and the [BCNR's] stated rationale, the court concludes that the [BCNR] was not

12

arbitrary, capricious, or unreasonable in deciding not to convene an evidentiary hearing." *Lopez-Velazquez v. United States*, 85 Fed. Cl. 114, 136 (2008) (upholding Air Force Board for Correction of Military Records' decision to forgo a hearing given the completeness of the record); *see* 32 C.F.R. § 723.3(e)(1).

Mendez argues that a hearing was still needed to allow the BCNR to assess his affiants' credibility. *See* Pl.'s Mot. at 18. But because the BCNR had no such questions, it elected not to hold a perfunctory hearing. *See* AR 0445–0446. Mendez hypothesizes that "[m]aybe the Board opted not to hold the hearing because it would have been required to record the hearing," leading to information that would tarnish Major General Liszewski's reputation. Pl.'s Mot. at 18. Yet again, Mendez has provided no evidence to support his assertion of bad faith. This failure is more glaring given that it was Mendez's burden to provide "'substantial evidence' in order to overcome the [BCNR's] presumption that 'public officers,' including military officers, 'have properly discharged their official duties.'" *Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014) (quoting 32 C.F.R. § 723.3(e)(2)). Instead of inventing a complex conspiracy, Occam's razor suggests that the explanation for not holding a hearing was the BCNR's stated reason: a hearing "would not materially add to its understanding of the issues involved." AR 0445. Given the plausibility of this reason and the lack of contrary evidence, the Court finds the BCNR's explanation credible. *See Mahoney v. Del Toro*, 99 F.4th 25, 38 (1st Cir. 2024) (upholding BCNR's decision to forgo a hearing because it stated that "a personal appearance with or without counsel [would] not materially add to [the BCNR's] understanding of the issues involved.").

Accordingly, the Board did not abuse its discretion in denying a hearing.

## IV.    CONCLUSION

The Court is deeply appreciative for Mendez's service. But that gratitude cannot override a statutory scheme that has long preceded the BCNR's determination.

Date: January 29, 2026

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE